GEORGE B. BARNES v. WILLIAM FOXEN, GEO. W. NEWMAN AND THE DETROIT CIGAR MANUFACTURING CO.

*Sale of goods—Inadequacy of Price—Concealment.*

Concealment of a sale of goods from creditors is not necessarily a badge of fraud, especially if necessary to prevent sacrifices; neither is a sale of selected goods at a discount of thirty-five per cent. if neither vendor nor purchaser supposes the concern to be insolvent, and the only purpose is to raise money to meet pressing demands.

Appeal from Wayne. (Speed, J.) April 17.—April 23.

CREDITOR'S bill. Defendant company appeals. Reversed.

*L. H. Collins* and *Conely, Maybury & Lucking,* for complainant, cited *Robinson v. Boyd* 17 Mich. 128; *Fellows v. Smith* 40 Mich. 691.

*Don M. Dickinson* for defendant appellant. Fraud will never be imputed where the facts are consistent with honesty: *Gay v. Bidwell* 7 Mich. 519; *Darling v. Hurst* 39 Mich. 769; *Burleigh v. White* 64 Me. 23; *Drummond v. Couse* 39 Ia. 442; *Rumbolds v. Parr* 51 Mo. 592; *Schofield v. Blind* 33 Ia. 175; where debtors are compelled to sell at a sacrifice to meet liabilities, such sales are not held to indicate impure intentions: *Hubbs v. Bancroft* 4 Ind. 388; *Phettiplace v. Sayles* 4 Mas. 317; nor is an arrangement to rescind them necessarily fraudulent: *Barr v. Hatch* 3 Ohio 390; *Glenn v. Randall* 2 Md. Ch. 220; *Anderson v. Fuller* 1 McMull. Ch. 27.

CAMPBELL, J. This was a bill filed by a judgment creditor after return of execution unsatisfied, to reach property claimed by complainant to have been fraudulently transferred by the debtors, Foxen and Newman, to the cigar company. The court below granted a judgment and execution against the company, and an appeal is brought from that judgment.

The proceeding is somewhat peculiar in form, but appellant raised no questions differing from those on an ordinary bill, and we need consider no others.

The case charged was, in brief, that complainant was a creditor of Foxen, Newman & Co., (of which Foxen and Newman were the only partners,) in September, 1880, and somewhat earlier, by debts not then matured; that on the 2nd day of September, 1880, Foxen having disappeared the night before, and the firm being known to be insolvent, Newman, who intended to make an assignment, was persuaded by Mr. McLean, the manager of the cigar company, to sell him about $10,000 of choice tobacco, (in which the firm were wholesale dealers,) which he selected at his option from the most desirable stock, at fifty cents on the dollar of its cost, to raise money enough to cover immediate needs for bills becoming due, it being arranged that Newman should have a sum of $1000 in case things went smoothly and no trouble was made by creditors. The arrangement was to be kept from creditors, and if Foxen should come back and dissent, then it was to be rescinded.

This is the transaction as complained of. The rest of the case was made up of subsequent dealings only significant in their bearing upon this.

The witnesses sworn upon the merits of this dispute were Newman, McLean, and a bookkeeper named McCain. From a fair comparison of their testimony we are satisfied that the transaction was not a fraudulent one. Without going at large into the facts, we think that the affair was substantially this:

It is entirely clear to us that neither Newman nor McLean had any idea that the firm was not perfectly solvent. It was in good credit, and Foxen was supposed to be wealthy. He was financial manager, and Newman had little to do with that part of the business. Foxen's sudden disappearance led to surmises of various kinds among different persons, and made it impossible for Newman to get renewals of the notes falling due at that time. He became bewildered, and went to find Mr. Caplis, a friend of Foxen's, to get advice what to do. McCain inferred that he meant to make an assignment, and McLean being told of this and where he had gone, went with McCain to the office of Mr. Caplis and advised Mr.

Newman to make sale of enough tobacco to tide over present necessities. A sale was then agreed upon, and McLean purchased tobacco to the amount of about $5800, as alleged and shown, at less than the cost. Just how much less is left in some doubt, but from Newman's and McLean's testimony the price paid was not far from 65 per cent. The invoice books were not put in evidence and there was no satisfactory evidence of local value at the time. We think the testimony also indicates that McLean agreed, or had some understanding, that if Foxen returned and objected, he was willing to have the whole contract rescinded and the goods and price respectively returned. We are satisfied this was all the agreement, and that no personal inducement was given to Newman to consent to it, and no fraud intended by any one. Newman used at once, including such funds as were on hand, more money than the entire price to pay notes falling due, and the business went on as usual, and no knowledge of insolvency came to either Newman or McLean till afterwards.

On Foxen's return a few days thereafter, he did make objection, but no attempt or offer was made by any one to return the consideration, so as to rescind the bargain, although the company afterwards made some further payments to avoid importunity and annoyance, and these subsequent advances are dwelt on as proof of a fraud in the bargain, not as between the parties, but as against creditors.

In our opinion the transaction was legal and proper. It was evidently the only way in which the ruin of an apparently solvent house could be prevented. Had the paper gone to protest, or had it become known generally that money had to be raised by forced sale for cash to meet an emergency, not only would greater sacrifices have been probable, but it would have been certain to break up their credit. Secrecy was needed, not to deceive creditors, but to prevent sacrifices. It does not appear to us that McLean drove an unconscionably hard bargain, or meant to do any injustice, and it is by no means probable that any better sale could have been made. The testimony does not, we think, show any unusual

breaking of assortments. We do not think the testimony bears out the allegations of fraud or of any secrecy, beyond what the credit of the firm required. Business went on as usual for some time, and we think there is nothing to impugn the good faith of this dealing.

It was claimed that McCain's testimony shows some designed contrivance and fraud. It does, in some respects, apparently vary from that of the other witnesses. We think the view we have taken is the one which the most reliable portion of all the testimony in the case sustains. But were we in any doubt on the subject, as we are not, we do not think McCain's testimony would solve it. We are inclined to think he meant to be a fair witness, but we find it almost impossible to tell from this record what was his real and intended testimony. Not only are the questions put to him grossly leading and suggestive, but they are frequently so complicated and involve so many inferences and assertions of counsel, that we cannot be sure how much of each question, in some important inquiries, the witness' answer was meant to cover. It was taken without cross-examination, and is not in our view in any way to be preferred over the other proofs, or to be conclusive in settling serious differences, if they existed, as we think they do not exist to any great extent on matters which relate to the sale of September 2, 1880. A great deal of McCain's testimony can only be accounted for as hearsay or inference from matters not sufficiently distinguished to separate knowledge from conjecture. The bulk of it is of such a character that without cross-examination it furnishes no adequate test of reliability. But taking it at its best, we see nothing in it which should change the result as against the other testimony and corroborating facts.

Having reached this conclusion on the merits, so that we can properly end the controversy, we pass over the equally fatal defect of want of parties, and perhaps some other faults, which, were the merits different, might be rectified hereafter. The case has, in our view, no such equities as should disturb the rights of the cigar company.

The decree must be reversed and the bill dismissed, with costs of both courts.

The other Justices concurred.